## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| DEREK ROTONDO, on behalf of himself and all others similarly situated, | |
| Plaintiff, | |
| v. | No. 19-cv-02328 |
| | District Judge George C. Smith |
| JPMORGAN CHASE Bank, N.A., | Magistrate Judge Chelsey M. Vascura |
| Defendant. | |

### DECLARATION OF PETER ROMER-FRIEDMAN IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE PAYMENT

I, Peter Romer-Friedman, declare under penalty of perjury of the laws of the United States:

1.       I am competent to testify and have personal knowledge about what is written in this declaration.

2.       I have worked on this matter since the summer of 2017.  During this time, I was employed as Counsel by Outten & Golden LLP ("Outten & Golden").

3.       I submit this declaration in support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement and Plaintiff's Unopposed Motion for Approval of Attorneys' Fees, Reimbursement of Expenses, and Service Payment.

### MY BACKGROUND AND EXPERIENCE

4.       I am admitted to practice in the District of Columbia and New York, and in the U.S. District Courts for the District of Columbia, Southern District of New York, Eastern District of

1

New York, District of Colorado, and Northern District of Illinois.  I am also admitted to practice in the U.S. Courts of Appeals for the D.C. Circuit, Sixth Circuit, Seventh Circuit, Ninth Circuit, and Federal Circuit.  I am admitted to practice in the Supreme Court of the United States.

5.      I am Counsel at Outten & Golden and a member of the firm's Class Action Practice Group.  Outten & Golden is a 70-plus attorney firm that focuses on representing plaintiffs in a wide variety of employment matters, including individual and class action litigation, as well as contract and severance negotiations.  Outten & Golden focuses on advising and representing individuals in employment, partnership, and related workplace matters, both domestically and internationally. The firm counsels individuals on employment and severance agreements; handles complex compensation and benefits issues (including bonuses, commissions, and stock/option agreements); and advises professionals (including doctors and lawyers) on contractual issues. It also represents employees with a wide variety of claims, including discrimination and harassment based on sex, sexual orientation, gender identity and expression, race, disability, national origin, religion, and age, as well as retaliation, whistleblower, and contract claims. The firm handles class actions involving a wide range of employment issues, including economic exploitation, gender- and race-based discrimination, wage-and-hour violations, violations of the WARN Act, and other systemic workers' rights issues.  Our lawyers are recognized as some of the most qualified and highly skilled in the field of employment law. *Best Lawyers* and *U.S. News & World Report* ranked Outten & Golden as "Best Law Firm" in Litigation – Labor & Employment and Employment Law – Individuals.  In December 2014, *Legal Leaders* ranked Outten & Golden "New York Area's Top Rated Lawyers for Labor & Employment."  Many of our lawyers are AV-rated by Martindale-Hubbell and have been recognized by Super Lawyers in the field of "Employment Law – Employee."  The Legal 500 recognized Outten & Golden as belonging to the

first tier of law firms in the category of "Labor and Employment Disputes (Including Collective Actions): Plaintiff."

6.     The attorneys at Outten & Golden are experienced, highly regarded members of the plaintiffs' employment bar with extensive expertise in the area of class actions and complex litigation involving discrimination claims like those at issue in this litigation.   Courts have repeatedly recognized Outten & Golden as qualified counsel for class actions.  *See, e.g.*, *Amochaev v. Citigroup Glob. Mkts., Inc.*, No. 05 Civ. 1298 (N.D. Cal.) (gender discrimination class action brought on behalf of a national class of female financial advisors, resulting in settlement of $33 million and comprehensive injunctive relief); *Jaffe v. Morgan Stanley & Co., Inc.*, No. 06 Civ. 3903 (N.D. Cal.) (race discrimination class action brought on behalf of African American and Latino financial advisors, resulting in settlement of $16 million and comprehensive injunctive relief); *Duling v. Gristede's Operating Corp.*, No. 06 Civ. 10197 (S.D.N.Y.) (appointing Outten & Golden as class counsel in a Title VII case); *Easterling v. Conn. Dep't of Corr.*, No. 08 Civ. 826 (D. Conn.) (same); *Wright v. Stern*, No. 01 Civ. 4437 (S.D.N.Y.) (same).

7.     I regularly represent employees in cases challenging discrimination based on military service or status, sex, sexual orientation, age, race, national origin, and disability.

8.     Since 2009, I have served as lead or co-lead counsel in actions that secured more than $1.4 billion in monetary relief and important programmatic changes to governmental and corporate institutions, including one of the largest reported settlements in the history of the Equal Credit Opportunity Act, two of the largest reported settlements in the history of the Fair Housing Act, and at least four of the largest reported settlements in the history of the Uniformed Services Employment & Reemployment Rights Act ("USERRA").   In March 2019, I negotiated an unprecedented settlement of three putative class actions against Facebook in which Facebook

agreed to overhaul its adverting platform to prevent employment, housing, and credit advertisements from using the age, gender, race, and other protected classes of Facebook users to exclude such users from receiving such advertisements in violation of federal, state, and local laws. *Mobley v. Facebook, Inc.*, No. 16 Civ. 06440 (N.D. Cal.). In 2017, I negotiated the first settlement of an employment class action brought on behalf of gay and lesbian workers, in which the workers asserted that their employer, Walmart Stores Inc., had denied them spousal health benefits because they were married to persons of the same sex. *Cote v. Wal-Mart Stores, Inc*., No. 15 Civ. 12945 (D. Mass.). In addition, I have settled Uniformed Services Employment and Reemployment Rights Act ("USERRA") class cases with Washington State, American Airlines, United Airlines, Southwest Airlines, Federal Express Corp., and L-3 Communications. Some of my representative matters where I was the lead or co-lead counsel include:

- *Mobley v. Facebook, Inc.*, No. 16 Civ. 06440 (N.D. Cal.); *Communications Workers of America v. Facebook* (EEOC); *Spees v. Facebook* (EEOC) – negotiated a settlement of a putative class action challenging race and national origin discrimination in employment, housing, and credit advertising on Facebook's ad platform, and two class-based EEOC charges that alleged age and gender discrimination in employment advertising on Facebook's ad platform. The settlement included groundbreaking changes to Facebook's ad platform to prevent discrimination against workers and consumers based on protected classes covered by federal, state, and local law in employment, housing, and credit advertising and recruiting.

- *Huntsman v. Southwest Airlines Co.*, No. 17 Civ. 3872 (N.D. Cal.) – served as Class Counsel and obtained USERRA settlement estimated to be worth up to $19 million

for up to 2,000 Southwest Airlines pilots who were denied pension and sick leave benefits between 2001 and 2018.

- *Hall v. L-3 Communications Corp.*, No. 15 Civ. 231 (E.D. Wash.) – served as Class Counsel and obtained a $2 million settlement and critical programmatic changes in a USERRA action on behalf of hundreds of pilots who were denied jobs at a major defense contractor, the first settlement of a hiring bias pattern or practice class case under USERRA.

- *Cunningham v. Federal Express Corp.*, No. 17 Civ. 845 (M.D. Tenn.) – served as Class Counsel in an action on behalf of over 4,000 reservists who claimed they were denied proper pension credit for periods of military leave from 1996 to 2008, and obtained a settlement worth at least several million dollars, with all Class Members receiving at least 100% of their potential lost pension benefits and payments.

- *Keepseagle v. U.S. Department of Agriculture*, No. 99 Civ. 03119 (D.D.C.) – served as co-lead counsel in a class action that obtained a $760 million settlement for Native Southwest farmers and ranchers who were denied farm loans by the U.S. Department of Agriculture from 1981 to 1999, as well as far-reaching programmatic relief.

- *National Fair Housing Alliance v. Wells Fargo & Co.*, HUD No. 09-12-0708-8 – served as lead counsel and obtained a $42 million settlement with Wells Fargo in a Fair Housing Act action brought by 13 fair housing groups who challenged the failure to properly maintain and market foreclosed properties in predominantly black and Latino communities nationally.

- *Tuten v. United Air Lines, Inc.*, No. 12 Civ. 01561 (D. Colo.) – served as Class Counsel and obtained a $6.15 million settlement on behalf of 1,200 United pilots in a USERRA

action that challenged United's failure to make the proper pension contributions during periods of military leave from 2001 to 2012.

- *Allman v. American Airlines, Inc. Pilot Retirement Program Variable Income Plan*, No. 14-cv-10138 (D. Mass.) – served as Class Counsel and obtained settlement worth over $6.4 million on behalf of over 1,200 American Airlines pilots in a USERRA and ERISA action that challenged the airline's failure to make the proper pension contributions during periods of military leave since 1997.

- *Hill v. U.S. Postal Service*, No. 4H310009104 (EEOC) – served as Class Counsel and obtained a $11 million settlement in a nationwide class action that challenged the U.S. Postal Service's pre-offer medical inquiries that violated the Rehabilitation Act.

- *Cote v. Wal-Mart Stores, Inc.*, No. 15 Civ. 12945 (D. Mass.) – served as Class Counsel and obtained a $7.5 million settlement on behalf of a class of current and former Wal-Mart employees who challenged Wal-Mart's prior policy of not providing spousal health insurance benefits to employees with same-sex spouses as a Title VII violation. All Class Members who submitted claim forms received payments that were at least several times the value of the health insurance benefits that they were denied over a three-year period.

- *Greater New Orleans Fair Housing Action Center v. U.S. Department of Housing and Urban Development*, No. 08 Civ. 1938 (D.D.C.) – served as co-lead counsel and obtained $469 million of voluntary reforms in response to lawsuit and negotiated a $62 million settlement in a Fair Housing Act class action that challenged racial discrimination in the nation's largest housing rebuilding program in post-Katrina New Orleans.

- *Levs v. CNN and Turner Broadcasting*, EEOC Charge No. 410-2014-00427 - obtained settlement in a Title VII action that challenged the amount of paternity leave biological fathers were given by CNN and Turner Broadcasting as a violation of Title VII's prohibition on sex discrimination.

- *Podliska v. House Benghazi Committee & Rep. Harold Watson "Trey" Gowdy*, No. 15 Civ. 2037 (D.D.C.) – obtained a settlement on behalf of a former investigator of the House Benghazi Committee who alleged that he was terminated in violation of USERRA due to his military service.

9.      Prior to joining Outten & Golden in September 2016, I served as the Deputy Director of Litigation of the Washington Lawyers' Committee for Civil Rights and Urban Affairs. As the Deputy Director of Litigation, I litigated and supervised class and individual impact cases in a range of areas, including employment discrimination, fair housing, and public accommodations.

10.      I have been selected as a Rising Star in the District of Columbia by Super Lawyers in 2014, 2015, 2016, 2017, 2018, and 2019.  On two occasions, I was a finalist for Public Justice's Trial Lawyer of the Year Award: in 2011 for my work in *Keepseagle v. Vilsack*, and in 2018 for my work in *Cote v. Walmart*.  In 2018 and 2019, I was recognized as one of the 500 Leading Plaintiff Employment Lawyers by Lawdragon.

11.      I currently serve on Law360's Employment Advisory Committee Board.

12.      From 2016 through 2017, I was an adjunct law professor at the Georgetown University Law Center, where I taught a course on civil rights law in which I supervised law students who were externs for civil rights agencies and organizations.

7

13.     From 2009 to 2015, I served as an associate in Cohen Milstein Sellers & Toll PLLC's Civil Rights and Employment group.

14.     From 2007 to 2009, I served as labor counsel to the Senate Committee on Health Education Labor and Pensions ("HELP") and its Chairman, Senator Edward M. Kennedy.  Among my responsibilities as labor counsel, I served as the primary advisor to Chairman Kennedy and other members of the HELP Committee on USERRA issues, and drafted several USERRA reform proposals that were enacted by Congress and signed by President George W. Bush and President Barack Obama.

15.     Since leaving the HELP Committee in 2009, I have regularly advised Senate and House Committees (including the Labor, Veterans' Affairs, and Judiciary Committees) and members of Congress on labor, employment, civil rights, and veterans' issues, and I am an active member of the National Employment Lawyers Association's federal legislative advocacy in Washington, DC.

16.     From 2006 to 2007, I served as a law clerk to the late Judge Stephen Reinhardt of the U.S. Court of Appeals for the Ninth Circuit in Los Angeles.

17.     During law school, I was an extern to retired Judge Shira Scheindlin of the U.S. District Court for the Southern District of New York.

18.     In 2006, I graduated from Columbia Law School, where I was a James Kent Scholar and a Harlan Fiske Stone Scholar.  During law school, I served as a managing editor of the Columbia Journal of Law & Social Problems.

19.     Prior to law school, I was a legislative representative and union organizer for the United Steelworkers and co-founded the Worker Rights Consortium, a non-profit organization that monitors labor rights in apparel factories worldwide.

20.     In 2001, I earned a B.A. in economics from the University of Michigan at Ann Arbor, and in 2000, I was selected as a Truman Scholar by the Harry S. Truman Scholarship Foundation.

21.     I have authored the following articles focused on workers' rights:  *Eliot Spitzer Meets Mother Jones: How State Attorneys General Can Enforce State Wage and Hour Laws*, 39 Colum. J. L. & Soc. Probs. 495 (2006); *Modeling Wage Increases in the Collegiate Apparel Industry*, Mich. J. Econ., Vol. 16, Issue 1 (2000) (co-authored with Glenn Wright and Adam Levin).

### ADAM T. KLEIN'S BACKGROUND AND EXPERIENCE

22.     Adam T. Klein is the Managing Partner of Outten & Golden and has represented employees in a full range of employment cases since 1991.  A noted authority on class action litigation, he has written numerous articles and is a frequent speaker on class-based wage and hour claims.  He is a past officer of the National Employment Lawyers Association/New York and co-chairs several committees of the American Bar Association's Labor & Employment Law Section.  For numerous years, he has been selected as one of the Lawdragon 500 leading lawyers in America as well as Best Lawyers in America, New York's Super Lawyers – Manhattan Edition, and as a leading lawyer in the Legal 500.  He received his undergraduate degree from the School of Industrial and Labor Relations at Cornell University in 1987 and his law degree from Hofstra University in 1990.

### JUNO TURNER'S BACKGROUND AND EXPERIENCE

23.     Juno Turner was a Partner at Outten & Golden until April 2019.  Prior to joining Outten & Golden in October 2009, Ms. Turner clerked for the Honorable James Orenstein in the Eastern District of New York and completed a two-year honors program in the Office of the New

York State Attorney General, Labor Bureau. She is a member of the American Bar Association – Labor and Employment Section and serves on the Federal Labor Standards Legislation Committee. She is also a member New York State Bar Association, where she serves on the Labor and Employment Law Committee and a member of the National Employment Lawyers Association ("NELA") and NELA's New York Chapter. She earned her B.A. from the University of Colorado at Boulder in 2000 and her J.D., *magna cum laude*, from Fordham University School of Law in 2006. She was admitted to the bar of the State of New York in 2007. She is also admitted to the bars of the United States District Courts for the Southern and Eastern Districts of New York, and the U.S. Courts of Appeal for the Second and Ninth Circuits. She is a member in good standing of each of these bars.

## DEIRDRE AARON'S BACKGROUND AND EXPERIENCE

24.     Deirdre Aaron is a Partner at Outten & Golden and is one of the lawyers primarily responsible for prosecuting Plaintiff's claims on behalf of the Class. Prior to joining Outten & Golden in 2012, she worked as a staff attorney at the U.S. Court of Appeals for the Eighth Circuit. Since then, she has exclusively represented employees in employment law matters. She has been selected as a Rising Star in New York City by Super Lawyers in 2016, 2017, and 2018, and was a recipient of Public Justice's Trial Lawyer of the Year Award in 2017 for her team's work on *Gonzalez v. Pritzker*. Ms. Aaron received her B.A. from Northwestern University in 2004 and her J.D., *magna cum laude* and Order of the Coif, from Washington University in St. Louis School of Law in 2010. Ms. Aaron was admitted to the bar of the State of New York in 2011. Ms. Aaron is also admitted to the bar for the Commonwealth of Pennsylvania, the bars of the U.S. District Courts for the Southern and Eastern Districts of New York and the Eastern District of Pennsylvania, and the U.S. Court of Appeals for the Second Circuit.

## POOJA SHETHJI'S BACKGROUND AND EXPERIENCE

25.     Pooja Shethji is an associate at Outten & Golden.  She represents employees in class and collective action wage and hour and discrimination cases.  Before joining the firm in 2018, Ms. Shethji clerked for the Honorable Theodore D. Chuang of the U.S. District Court for the District of Maryland and the Honorable Joseph A. Greenaway, Jr., of the U.S. Court of Appeals for the Third Circuit.  She received her B.A. from Yale College in 2012 and her J.D., *cum laude*, from New York University School of Law, where she was a Root-Tilden-Kern Public Interest Scholar, in 2016.  Ms. Shethji is admitted to the bars of the State of New York, the District of Columbia, the U.S. District Court for the District of Maryland, and the U.S. Courts of Appeals for the Third, Fourth, and Seventh Circuits.

## NATALIE CHEW'S BACKGROUND AND EXPERIENCE

26.     Natalie Chew is a paralegal at Outten & Golden.  She assists Outten & Golden's class and collective action and individual practice groups in all stages of federal and state court employment litigation.  She received her B.A. *magna cum laude*, from Harvard University in 2017.

## CASE BACKGROUND AND THE EEOC CHARGE

27.     Derek Rotondo, a veteran who served in the U.S. Navy, has worked for Chase since 2010.

28.     Mr. Rotondo and his wife have two children, who were born in May 2015 and June 2017.

29.     Several weeks before Mr. Rotondo's second child was born, Chase's "Ask Access HR" service informed him that for birth fathers to qualify as the "primary caregiver" under Chase's paid parental leave policy, they would have to show that the father's spouse had returned to work,

or that the spouse was medically incapable of caring for the child. Mr. Rotondo could not satisfy these requirements for primary caregiver status, which birth mothers did not have to meet.

30.     On June 15, 2017, Mr. Rotondo filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission. The Charge of Discrimination challenged Chase's denial of his request for primary caregiver leave and Chase's alleged policy and practice of denying primary caregiver leave to fathers, on behalf of himself and a class of similarly situated male employees who had been denied primary caregiver leave by Chase.

31.     Mr. Rotondo's Charge of Discrimination challenged Chase's policy that took effect in 2016 ("the 2016 policy"), under which employees who were primary caregivers could receive up to 16 weeks of paid parental leave, while employees who were not primary caregivers (non-primary caregivers) could receive only up to 2 weeks of paid parental leave. The Charge of Discrimination also challenged the preceding policy, which provided 12 weeks of paid parental leave to primary caregivers and one week of paid parental leave to non-primary caregivers, but was otherwise substantially similar to the 2016 policy.

32.     On November 8, 2018, the EEOC issued a determination, finding reasonable cause to believe that that a violation of Title VII had occurred, which Chase disputes. On February 8, 2019, the EEOC issued a right to sue letter to Mr. Rotondo.

## SETTLEMENT NEGOTIATIONS AND ROLE OF CLASS COUNSEL

33.     Shortly after Mr. Rotondo filed his EEOC charge, he and JPMorgan Chase Bank, N.A. ("Chase") (collectively, the "Parties") agreed to attempt to resolve the putative class action without resorting to litigation beyond the EEOC's investigation.

34.     From July 2017 to April 2019, the Parties engaged in settlement discussions and informal discovery to learn about Chase's policies and how putative class members were impacted

by the policies.  On July 25 and October 3, 2017, the Parties met in person to begin exchanging information and negotiating settlement terms.

35.     The Parties undertook a range of relevant discovery that led to an informed negotiation and settlement. My colleagues and I interviewed Mr. Rotondo and a number of other current and former Chase employees to investigate how their parental leave requests were treated, their interactions with human resource professionals, and other facts.  In doing so, my colleagues and I confirmed that Mr. Rotondo's experience was representative of other fathers who could not qualify to be primary caregivers under the 2016 Policy or who were deterred by Chase's personnel from taking primary caregiver leave under that policy.

36.     Before mediation, Chase provided my colleagues and me with a range of information on its parental leave policies and how they were applied, the number of fathers who took primary and non-primary caregiver leave, and salary information of Chase employees.

37.     Before and during the EEOC proceedings, my colleagues and I conducted a thorough investigation into and legal research on the merits of the potential claims and defenses, class certification, and the potential relief.  The Parties also exchanged detailed EEOC position statements to inform each other of the key facts and legal issues and, during the mediation process, detailed mediation statements on the claims, defenses, and potential damages.

38.     All of this discovery and information informed the two negotiating sessions in New York, New York (without a mediator); two full days of mediation on April 16 and May 14, 2018 with an experienced mediator, Hunter Hughes III, in Atlanta, Georgia; and dozens of calls and other communications that led to an informed Settlement.

39.     From May 2018 to April 2019, the Parties negotiated an agreement in principle; exchanged many Settlement drafts; developed a claims process, Claim Form, and proposed Notice;

and issued a request for proposal to settlement administrators to jointly recommend one to the Court. The Settlement was executed on May 28, 2019.

40.     Mr. Rotondo actively participated in the EEOC's investigation and settlement negotiations with Chase. I have worked with dozens of class representatives, and believe that Mr. Rotondo has been a model class representative who placed the interests of the Settlement Class above his own interests at all times.

41.     During this process, all negotiations were conducted on an arm's-length basis.

## THE SETTLEMENT AND THIS LITIGATION

42.     The Parties have agreed to settle this case for $5,000,000, a substantial amount and the largest known class settlement of claims challenging sex discrimination in parental leave. The settlement amount represents excellent value given the risks of litigation, though the recovery could potentially be greater if Plaintiff won class certification, succeeded on all claims at trial, proved the Class's damages, and survived an appeal. The recovery, though, could also be smaller than the $5,000,000 recovery provided by the Settlement.

43.     Each Settlement Class Member will receive a pro rata share of the Net Settlement Fund based on the number of valid claims submitted, and each claim will be worth thousands of dollars. More information on this subject will be provided by the Settlement Administrator.

44.     The Settlement also includes important programmatic relief—having and implementing a gender-neutral policy, and related training and monitoring—that will benefit thousands of Chase employees and their families.

45.     On May 30, 2019, Mr. Rotondo filed this putative class action and Unopposed Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of the

Settlement Class, Appointment of Plaintiff's Counsel as Class Counsel, and Approval of the Proposed Notice of Settlement and Class Action Settlement Procedure.  ECF Nos. 1, 2.

46.     By June 10, 2019, Chase satisfied its obligation to serve the appropriate settlement notice documents on the relevant federal and state attorneys general to comply with the Class Action Fairness Act ("CAFA").  The Parties have not received any comments from any state or federal official regarding the Settlement, aside from two communications confirming receipt of the settlement notice.

47.     The Court granted conditional certification of the Settlement Class and preliminary approval of the Settlement on June 21, 2019.  ECF No. 16.  At that time, the Court appointed the American Civil Liberties Union Women's Rights Project ("ACLU") as Class Counsel.  *Id*.

48.     My colleagues and I have spent many hours speaking to and e-mailing with members of the Settlement Class about the Settlement, settlement eligibility, and the claims process.  A number of current and former employees of Chase contacted us after learning about the settlement through news reports.  Many Settlement Class Members contacted my colleagues and me after notice of the Settlement was disseminated.

49.     My colleagues and I have fielded calls and emails from approximately 195 individuals.  We will continue to communicate with members of the Settlement Class to answer questions about the final approval and payment processes.

50.     My colleagues and I have also exchanged dozens of emails and had multiple phone calls with both the Settlement Administrator and Chase's counsel to discuss issues including, but not limited to: (1) the content of and timing for disseminating the Court-approved Notice and Claim Form and establishing the settlement web site; (2) reviewing the Settlement Administrator's weekly reports on the notice and claim form mailings; (3) discussing and drafting a request for

supplemental notice to encourage Settlement Class Member participation after the Settlement Administrator reported, on August 16, 2019, that fewer than 300 Claim Forms had been filed as of that date; and (4) discussing certain individuals' eligibility to participate in the Settlement.

51.     As a result of the Parties' discussions, the Parties agreed that 13 additional individuals, who reached out to my colleagues and me after learning about the settlement through news reports, should have been included on the Class List.  The Parties also agreed that individuals who were able to take some, but not all, of the available amount of primary caregiver leave after their spouses had returned to work were eligible for relief.

## THE FEES AND EXPENSES REASONABLY AND NECESSARILY INCURRED

52.     My colleagues and I have invested substantial time and maintained significant expenses to prosecute this case.

53.     As of October 16, 2019, Outten & Golden has expended approximately 1,003 hours investigating, prosecuting, and settling this matter, resulting in a lodestar of approximately $545,721 based on the firm's ordinary hourly rates.  Attached as **Exhibit 1** are summaries of the time spent by each Outten & Golden attorney and support staff member as of October 16, 2019, along with their respective hourly rates and lodestar.

54.     Outten & Golden has expended $21,139.53 in costs and expenses as of the same date.  Class Counsel's expenses were incidental and necessary to the representation of Plaintiff and the Class and are in line with costs charged to individual clients who pay out of pocket.  These expenses include court fees, transportation, mediation costs, printing, postage, copying, conference calls, and electronic research.  Attached as **Exhibit 2** is a true and correct summary of the costs incurred by Outten & Golden in this matter.

55.    Galen Sherwin of the ACLU has submitted a declaration ("Sherwin Decl.") in support of the application for fees and expenses, which indicates that the ACLU provided a total of approximately 229 hours of services to the Settlement Class calculated in a similar manner, which has a total value of approximately $132,006, and incurred costs and expenses in the amount of $6,516.39.  *See* Sherwin Decl. ¶¶ 15-18.

56.    Freda Levenson of the ACLU of Ohio Foundation has also submitted a declaration ("Levenson Decl.") in support of the application for fees and expenses, which indicates that the ACLU of Ohio Foundation provided a total of 41 hours of services to the Class calculated in a similar manner, which has a total value of $16,825, and incurred costs and expenses in the amount of $2,070.51.  *See* Levenson Decl. ¶¶ 14, 20; Sherwin Decl. ¶ 18.

57.    The table below summarizes the hours, lodestar, and costs of each firm or organization.

**Lodestar and Costs of All Firms**

|                          | Hours     | Lodestar        | Costs        |
|--------------------------|-----------|-----------------|--------------|
| Outten & Golden LLP      | 1,003.4   | $ 545,721.50    | $ 21,139.53  |
| ACLU                     | 229.31    | $ 132,006.73    | $ 6,516.39   |
| ACLU of Ohio Foundation  | 41        | $ 16,825        | $ 2,070.51   |
| **Total**                | **1,273.71** | **$ 694,553.23** | **$ 29,726.43** |

58.    The request for one-third of the Gross Settlement Award, *i.e.*, $1,666,666.67, is approximately 2.4 times the collective lodestar of $694,553.23.

59.    By the time Motion for Final Approval and Motion for Approval of Attorneys' Fees, Reimbursement of Expenses, and Service Payment are heard, these figures will have increased due to additional work performed by my colleagues and me for the Settlement Class Members' benefit.  We anticipate that we will expend substantial amounts of additional time and resources preparing for and attending the Fairness Hearing on November 6, 2019, responding to

17

inquiries from Class Members, and working with the Settlement Administrator to finalize its adjudication of the Claim Forms and distribute payments to the Class Members (should the Court grant Plaintiff's Motion for Final Approval).

60.     My colleagues and I have made every effort to have work performed by the attorney or paralegal with the lowest hourly rate that was able to perform the work effectively and available to work on this matter.  While several lawyers collaborated on major tasks when necessary, such as drafting the Complaint or attending the settlement negotiations, each of the primary lawyers in the case was assigned discrete tasks to avoid duplication and to reduce the extent to which more than a single member of Class Counsel had to spend time delving into complex issues.

61.     My colleagues and I pursued this case without any assurance of payment for our services, litigating it on a wholly contingent basis in the face of significant risk.  This risk is illustrated by our own experience in litigating other cases that resulted in either no recovery (and no fee award) or a substantially lower recovery (and lower fees) than anticipated.  For example, Outten & Golden has invested millions of dollars of time and hundreds of thousands of dollars of expenses with no reimbursement in many cases without being compensated for our time or out-of-pocket costs.  *See, e.g.*, *Scott v. Chipotle Mexican Grill, Inc.*, No. 12 Civ. 8333, 2017 WL 1287512 (S.D.N.Y. Mar. 29, 2017) (overtime misclassification claims on behalf of restaurant assistant managers); *Benedict v. Hewlett-Packard Co.*, No. 13-cv-119-BLF (N.D. Cal.) (overtime misclassification claims on behalf of technical support workers); *Winans v. Starbucks Corp.*, 796 F. Supp. 2d 515 (S.D.N.Y. 2011) (tip pool violation claims on behalf of baristas); *Pippins v. KPMG LLP*, No. 11 Civ. 377, 2012 WL 6968332 (S.D.N.Y. Nov. 30, 2012) (overtime misclassification claims on behalf of auditors).

## EXHIBITS

62.     Attached as **Exhibit 1** is a true and correct copy of Outten & Golden's Lodestar

Report.

63.     Attached as **Exhibit 2** is a true and correct copy of the Outten & Golden's

Counsel Cost Summary.

64.     Attached as **Exhibit 3** is a true and correct copy of the Joint Stipulation of

Settlement Agreement and Release ("Settlement" or "Settlement Agreement"), executed by the

Parties on May 28, 2019.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the

United States that the foregoing is true and correct.


DATED:  October 22, 2019

                                        /s/ Peter Romer-Friedman
                                        PETER ROMER-FRIEDMAN