# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

DEREK ROTONDO,

        Plaintiff,

   v.                                **Civil Action 2:19-cv-2328**
                                         **Judge George C. Smith**
JPMORGAN CHASE BANK, N.A.,     **Magistrate Judge Chelsey M. Vascura**

        Defendant.

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Derek Rotondo's ("Plaintiff" or "Mr. Rotondo") Unopposed Motion for Final Approval of Class Action Settlement (ECF No. 22). Plaintiff, individually and on behalf of similarly situated individuals, seeks final approval of the proposed class action settlement described in the parties' Settlement Agreement (ECF No. 24-5) (the "Settlement"). Notice was given to members of the Settlement Class, and a Fairness Hearing was held before the undersigned on November 6, 2019. Also before the Court is Plaintiff's Unopposed Motion for Approval of Attorneys' Fees, Reimbursement of Expenses, and Service Payment (ECF No. 24). Having considered the Settlement and the arguments in support of final approval, it is **RECOMMENDED** that Plaintiff's Motions (ECF Nos. 22 and 24) be **GRANTED**.

# I.    BACKGROUND

## A.    Procedural History

This action arises out of Defendant JPMorgan Chase Bank, N.A.'s ("Defendant" or "Chase") parental leave policy.  Under its policy effective in 2016 (the "2016 Policy"), Chase employees who were primary caregivers could receive up to 16 weeks of paid parental leave upon the birth of a child, while employees who were not primary caregivers (non-primary caregivers) could receive only up to 2 weeks of paid parental leave.  Named Plaintiff Rotondo was told by Chase human resources personnel that, under the 2016 Policy, birth mothers were presumptively treated as primary caregivers, while birth fathers were presumptively treated as non-primary caregivers.  To qualify as primary caregivers, birth fathers would have to show that: (1) the father's spouse had returned to work; or (2) the spouse was medically incapable of caring for the child.  Mr. Rotondo intended to be the primary caregiver for his son born in 2017, but could not satisfy the 2016 Policy's primary caregiver requirements because his wife had not yet returned to work and was capable of caring for their child.

Mr. Rotondo timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") challenging Chase's alleged policy and practice of denying primary caregiver leave to fathers, on behalf of himself and a class of similarly situated male employees.  From July 2017 through April 2019, the parties engaged in settlement discussions and informal discovery about Chase's policies and their impact on putative class members, including in-person negotiations on July 25 and October 3, 2017, and two days of mediation with an independent mediator on April 16 and May 14, 2018.  While the settlement talks were ongoing, Chase changed its parental leave policy in December 2017 to remove gender-specific language and clarify that fathers are eligible to be designated as primary caregivers on the same

basis as mothers.  The parties executed the Settlement on May 28, 2019, and Mr. Rotondo filed

this putative class action on May 30, 2019.  (ECF No. 1.)

## B.     Preliminary Approval

On June 21, 2019, the Court granted preliminary approval of the Settlement.  (ECF No.

16.)  The Court certified the following class under Federal Rules of Civil Procedure 23(a) and

23(b)(3) for settlement purposes only:

> [A]ll male employees of Defendant nationwide who took the maximum amount of
> non-primary caregiver leave available under Defendant's policy in effect at the time
> of the birth of one or more child (either 1 week or 2 weeks depending on the time
> period) during the Settlement Class Period, or if applicable, the State Settlement
> Class Periods, and would have otherwise qualified for paid primary caregiver leave,
> but did not take primary caregiver leave.

(Prelim. Approval Order 2, ECF No. 16, incorporating Settlement § 1.38, ECF No. 24-5).  The

Settlement Class period for class members not subject to the State Settlement Class Periods is

from August 19, 2016 (300 days before the charge was filed) through December 4, 2017 (when

Chase revised the 2016 policy).  Class members who worked in one of the following states are

subject to the following State Settlement Class Periods:

(a) <u>Alaska, Maine, New Jersey, and West Virginia</u>: June 15, 2015 through December 4, 2017

(b) <u>Michigan, New York, Washington, and Vermont</u>: June 15, 2014 through December 4, 2017

(c) <u>California</u>: June 15, 2013 through December 4, 2017

(d) <u>Kentucky</u>: June 15, 2012 through December 4, 2017

(e) <u>Ohio</u>: June 15, 2011 through December 4, 2017

(f) <u>Arkansas, Louisiana, Minnesota, North Carolina, Oregon, South Dakota, Tennessee, and District of Columbia</u>: June 15, 2016 through December 4, 2017

(*Id.* 2–3.)  Chase, through its personnel records, identified 5,035 members of the Settlement

Class.

## C.     The Settlement Agreement

The Settlement provides both programmatic and monetary relief to Settlement Class Members.  As part of the Settlement, Chase will continue to maintain a gender-neutral parental leave policy and will not reduce the amount of non-primary or primary paid caregiver leave it provides for four years from the effective date of the Settlement.  (Settlement § 3.5(A), ECF No. 24-5.)  Chase will also conduct training of relevant human resources personnel and contractors on its new parental leave policy, monitor implementation of the policy, and provide data to Plaintiff's counsel on the implementation of the policy for two years after the Settlement's approval.  (*Id.* § 3.5(B)–(C).)

The Settlement also establishes a $5 million Gross Settlement Amount that covers all amounts to be paid to, or on behalf of, Settlement Class Members; any Court-approved Service Payment to the Named Plaintiff; any Attorneys' Fees and Litigation Expenses approved by the Court; and any Settlement Administrator's fees and costs that exceed $50,000.  (*Id.* §§ 1.18, 3.1(A).)  Class Counsel may request attorneys' fees not to exceed one-third of the Gross Settlement Amount, as well as reimbursement of reasonable costs and expenses.  (*Id.* §§ 3.1(A), 3.2.)  Chase will pay the Settlement Administrator's fees and costs up to $50,000 in addition to the Gross Settlement Amount.  (*Id.* § 3.1(A).) The fees and costs of the Settlement Administrator above $50,000 will be paid from the Gross Settlement Amount. (*Id.*)

The Net Settlement Amount (which is the Gross Settlement Amount minus attorneys' fees and costs, service payments, and the settlement administrator's fees and costs that exceed $50,000) will be distributed in equal shares to Settlement Class Members based on the total number of valid claims submitted by Settlement Class Members. (*Id.* § 3.4(B).)  Settlement Class Members who had more than one child during the Settlement Class Period may receive compensation for multiple claims that they filed.  (*Id.* § 3.4(B)(v).)

To receive a Settlement Award, Settlement Class Members must have submitted a valid Claim Form by the Claim Form Deadline. (*Id.* §§ 1.6, 2.6(A).) As of October 22, 2019, the Settlement Administrator had received 1,503 claim forms, of which at least 1,440 have been determined to be valid. (Baldwin Dec. ¶ 16, ECF No. 24-9.) The Settlement Administrator has calculated the pro rata share of the Net Settlement Amount for each valid claim to be $2,301.04. (*Id.* ¶ 18.) Settlement Class Members will have 180 days to cash the checks that they receive from the Settlement Administrator. (Settlement §§ 1.1, 3.1(D), ECF No. 24-5.) Any amount remaining 20 days after the expiration of the 180-day Acceptance Period will be redistributed to Settlement Class Members who have timely cashed their checks or, if the amount remaining is small enough that a redistribution is not appropriate, unclaimed funds will be donated to a non-profit organization that the parties propose and the Court approves pursuant to the *cy pres* doctrine. (*Id.* §§ 1.4, 3.1(F).)

### D.     Notice

Plaintiff retained RG/2 as the Settlement Administrator. On July 12, 2019, RG/2 sent the Court-approved Notice and Claim Form to the 5,035 members of the Settlement Class by First Class U.S. Mail. (Baldwin Dec. ¶ 7, ECF No. 24-9.) The Court-approved Notice informed class members of the principal terms of the Settlement, the opportunity to object or opt out of the Settlement, the necessity of filing a claim form in order to receive monetary compensation, and the deadline for claim form submission and the date and location of the final approval hearing. On August 12, 2019, the Settlement Administrator also mailed a reminder postcard to 4,904 Settlement Class Members who had not yet returned a valid Claim Form. (*Id.* ¶ 9.) When RG/2 reported on August 16, 2019, that less than 300 claim forms had been filed, the parties sought and obtained Court approval to extend the claims deadline to September 30, 2019 and to continue the Final Approval Hearing until November 6, 2019. (ECF No. 21.) RG/2 then sent a

supplemental notice to all class members on September 19, 2019 informing them of the revised dates via First Class U.S. Mail, and, to the extent email addresses were available to Chase, by email. (Baldwin Dec. ¶ 14, ECF No. 24-9.)

As of October 22, 2019, RG/2 had received 1,503 claim forms. (*Id.* ¶ 15.) No class members objected to the Settlement, and 3 class members opted out of the Settlement. (*Id.* ¶ 10.)

## II. APPROVAL OF THE PROPOSED CLASS SETTLEMENT

The undersigned presided over a Fairness Hearing on November 6, 2019, to hear evidence and argument as to the adequacy of the proposed Settlement. At the Fairness Hearing, the undersigned heard argument from counsel for Plaintiffs and Defendant and heard from Mr. Rotondo.

In deciding whether to approve the proposed settlement, the Court must consider whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, the Court considers the following factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011) (citations and internal quotation marks omitted). The Court "enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992).

For the reasons that follow, the undersigned concludes that the Settlement is fair, adequate, and reasonable.

**A.      The Risk of Fraud or Collusion**

First, the undersigned finds that there is no evidence—or even a suggestion—that the settlement was the product of fraud or collusion, as testified to during the hearing.  *See Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (citing *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary.").  Rather, the settlement is the result of ongoing arm's-length negotiations with a third-party mediator.  "The participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."  *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007).  The undersigned concludes that this factor favors approval of the Settlement.

**B.      Complexity, Expense, and Likely Duration of the Litigation**

"Generally, [m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.'"  *Wright*, 2018 WL 3966253, at *3 (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F.Supp.2d 985, 1013 (S.D. Ohio 2001) (internal citations omitted.)).  Here, the difficulty Plaintiff and Class Members would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process provide justifications for the Court's approval of the proposed Settlement.

The Parties began negotiating a pre-litigation settlement in 2017.  Class Plaintiff's counsel explained at the hearing that continuing litigation would have resulted in additional time and effort spent continuing the litigation.  Settling the case now will result in the saving of time and money to the Parties and serve judicial economy.  If this matter is not settled at this time, there would, inevitably, be additional discovery. There would also likely be summary judgment

motions, pre-trial motions, case management conferences and hearings, and trial preparation, which would result in the expenditure of many additional hours of effort. Furthermore, the additional delay due to post-trial motions and the appellate process could prolong the litigation.

Accordingly, this factor weighs in favor of approving the Settlement. It secures a substantial benefit for the Class Members, undiminished by further expenses and without the delay, cost, and uncertainty of protracted litigation.

## C.     The Amount of Discovery Engaged in by the Parties

To confirm that Plaintiff and Class Members "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the parties. *Wright*, 2018 WL 3966253 at *4; *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Wright*, 2018 WL 3966253 at *4 (quoting *UAW v. Gen'l Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006)). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id*.

In this case, the parties engaged in sufficient informal discovery. In addition to Mr. Rotondo, Class Counsel interviewed several other current and former Chase employees to investigate Chase's treatment of their parental leave requests, their interactions with Chase's human resources, and other facts. (Romer-Friedman Decl. ¶ 35, ECF No. 24-2). The Parties also engaged in informal discovery for several months prior to the mediation, during which

Chase provided Class Counsel with a range of information on its parental leave policies and their application, the number of fathers who took or were denied primary and non-primary caregiver leave, and salary information of Chase employees. (*Id.* ¶ 36.) Furthermore, Class Counsel conducted a thorough investigation into and legal research about the merits of the potential claims and defenses, class certification, and the potential relief. (*Id.* ¶ 37.) The Parties also exchanged detailed EEOC position and mediation statements about the key facts and legal issues to inform each other about the claims and how to resolve the dispute. (*Id.*)

In short, the record demonstrates that both parties have been afforded an adequate opportunity to conduct sufficient discovery to be fully appraised of the legal and factual issues presented as well as the strengths and weaknesses of their cases. Both sides made well-informed decisions to enter into the Settlement. This factor weighs in favor of approving the proposed Settlement.

## D. The Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek*, 636 F.3d at 245 (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).

Here, the class had a substantial likelihood of success on the merits. Plaintiff argues that fringe benefits, including any period of paid or unpaid parental leave, are among the terms, conditions or privileges of employment that must be offered on a non-discriminatory basis. *See Cal. Fed. Sav. 13 & Loan Ass'n v. Guerra*, 479 U.S. 272, 279 n.10 (1987); *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 683 (1983). Employer policies may not distinguish between male and female employees based on "stereotypical notions about pregnancy and the abilities of pregnant workers," or based on gender stereotypes related to

women's presumed role as caregivers. *Guerra*, 479 U.S. at 290. Plaintiff has alleged that unlike female employees, who were presumptively treated as primary caregivers, male employees under Chase's policy were required to make the additional showing that their spouse is either incapacitated or has returned to work prior to being deemed eligible for primary caregiver status. He alleged that, by imposing different standards on male and female employees to be deemed primary caregivers, Chase treated men in a manner that, but for their sex, would have been different, in violation of Title VII's prohibition on intentional sex discrimination. *See*, *e.g.*, *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 80 (1998). Moreover, the presumption Chase imposed on Mr. Rotondo and its employees rested upon and perpetuated stereotypes about men's role as breadwinners and women's role as caregivers that the Supreme Court has repeatedly rejected. *See*, *e.g.*, *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 736–37 (2003).

Yet the case was not without risk to the plaintiffs. Were the case to proceed to trial, Chase would likely argue that its policies were not facially discriminatory, that Mr. Rotondo must prove that Chase applied its policies in a biased way to prevail, and that Chase applied its policies in a gender-neutral manner. Chase would likely assert that Mr. Rotondo could have qualified for primary caregiver leave under the policy's express terms, that far more fathers requested and were granted primary caregiver leave than fathers who were denied, and that the circumstances by which each father requested and was denied primary caregiver leave requires an individual inquiry that bars class certification

Accordingly, due to the existence of uncertainties inherent in their claims, the class's likelihood of success on the merits remains uncertain. This factor therefore weighs in favor of approving the Proposed Settlement.

**E.      The Opinions of Class Counsel and Class Representatives**

The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference. *Wright*, 2018 WL 3966253 at *5; *see, e.g., Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs. . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."). *See also Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").

In this case, Class Counsel have extensive experience in class action and employment discrimination litigation, with several decades of experience between the three primary attorneys. (*See* Romer-Friedman Dec. ¶¶ 4–25, ECF No. 24-2; Sherwin Dec. ¶ 10, ECF No. 24-6; Levenson Dec. ¶ 10, ECF No. 24-7.) After significant informal discovery and arm's-length negotiations, the Parties reached a settlement. Equipped with extensive experience, Class Counsel have concluded that this settlement is not only fair and reasonable but also a good result and confers substantial benefits on the Settlement Class. Class Plaintiff also approves of the settlement, as indicated by his executing the settlement agreement and his statement at the Fairness Hearing. The undersigned therefore finds that this factor favors approval of the proposed Settlement.

**F.      The Reaction of Absent Class Members**

The undersigned must also consider the reaction of the absent class members. *Poplar Creek*, 636 F.3d at 244; *In re Broadwing*, 252 F.R.D. at 376.

Here, the undersigned finds that reasonable and adequate notice was disseminated to the settlement class based upon measures described in the preliminary approval motion. Individual notices were sent by first class mail to the 5,035 members of the Settlement Class. Class

members further received a reminder post card by first class mail and a Supplemental Notice by first class mail and email. Despite such notice, there were no objections and only three requests for exclusion. This positive response from the Settlement Class weighs in favor of approving the settlement. *Wright*, 2018 WL 3966253, at *5; *see, e.g.*, *In re Broadwing*, 252 F.R.D. at 376.

## G. The Public Interest

"Public policy generally favors settlement of class action lawsuits." *Hainey v. Parrott*, 617 F.Supp.2d 668, 679 (S.D. Ohio 2007) (citations omitted). In this case, the Settlement confers immediate benefits on the Settlement Class, avoids the risks and expense in further litigation, and conserves judicial resources. The undersigned therefore finds that this factor favors approving the settlement.

In sum, after considering all the relevant factors, the undersigned concludes that the Settlement provides a substantial benefit to the parties and is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).

## III. ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

## A. Attorneys' Fees

Class Counsel seeks an award of 33 1/3% of the $5 million Gross Settlement Amount, or $1,666.666.67. Defendant has not opposed this request for fees nor have any Class Members. In addition to the Motion for Approval of the Settlement, the undersigned has reviewed Plaintiffs' counsel's Motion for Award of Attorneys' Fees and considered the additional arguments made in support of counsel's request.

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Rule 23 authorizes a court to "award reasonable attorney's fees and non-taxable costs that are authorized by law or by the

parties' agreement." *See* Fed. R. Civ. P. 23(h). Plaintiff's successful pursuit of this action can also support an award of reasonable attorneys' fees. *See Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194 (6th Cir. 1974) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

District courts apply a two-part analysis to assess the reasonableness of an attorney fee petition. *Wright*, 2018 WL 3966253, at *6; *see In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d 752, 760 (S.D. Ohio Dec. 31, 2007). First, the Court must determine the appropriate method to calculate the fees, using either the percentage of fund or the lodestar approach. *Id*. Whichever method is utilized, the United States Court of Appeals for the Sixth Circuit requires "only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Rawlings*, 9 F.3d at 516. Second, the Court must consider six factors to assess the reasonableness of the fee. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).

Here, the Court is applying the percentage of the fund method. *See, e.g., Gascho v. Global Health Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (indicating that the district court must make a "clear statement" as to which calculation method is being applied); *see also Kimber Baldwin Designs, LLC v. Silv Commc'n, Inc.*, No. 1:16-cv-448, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017) ("In the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier.") (internal citations and quotations omitted). Accordingly, the Court will consider the following factors in determining whether the fee request is reasonable under the circumstances:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the

litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Moulton*, 581 F.3d at 352.

Under the circumstances of this specific case, particularly where neither Defendant nor Plaintiff has opposed the fee request and the Class has received a "substantial benefit," the undersigned concludes that all of these factors weigh in favor of approving an award of attorneys' fees.

As to the first factor, the undersigned has already described above the benefit conferred to the Class Members through Settlement. This factor therefore weighs in favor of approving the requested award.

Second, the value of the services on an hourly basis, multiplied by the hourly rate, favors the proposed fee award. Here, although not required, a cross-check using Class Counsel's lodestar amount weighs in favor of granting the requested fee award. As Class Counsel represent in their memorandum and accompanying declarations, and as the undersigned has confirmed via an *in camera* review of Class Counsel's detailed billing records, their lodestar amounts to $694,553.23. (Romer-Friedman Decl. ¶ 57, ECF No. 24-2; Sherwin Dec. ¶ 18, ECF No. 24-6; Outten & Golden LLP Lodestar Report, ECF No. 24-3.) This means that the amount of fees sought, $1,666,666.67, is arrived at by multiplying Class Counsel's lodestar by approximately 2.4. This multiplier is within the range found reasonable in other class settlements. *See Dillow v. Home Care Network, Inc.*, No. 2:16-cv-612, 2018 WL 4776977, at *7 (S.D. Ohio Oct. 3, 2018) (approving fee award that was "approximately 2.9 times the lodestar" and noting that the multiplier "is well within the acceptable range of multipliers" for a wage and hour action); *Feiertag v. DDP Holdings, LLC*, No. 2:14-cv-2643, 2016 WL 4721208, at *7 (S.D. Ohio Sept. 9, 2016) ("Awards of common-fund attorney fees in amounts two to three-times greater than the

lodestar have been found reasonable."); *Lowther v. AK Steel Corp.*, 1:11-cv-877, 2012 WL 6676131, at \*5 (S.D. Ohio Dec. 21, 2012) (approving a "very acceptable" 3.06 multiplier and citing cases finding multipliers ranging from 4.3 to 8.74 to be reasonable). Thus, the lodestar cross-check confirms the reasonableness of the award.[1]

Third, Class Counsel represents that they took on this case pursuant to a contingency fee agreement. In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award. *Wright*, 2018 WL 3966253 at 7; *see, e.g., Kritzer*, 2012 WL 1945144, at \*9 ("Having taken the case on a contingency fee basis, Plaintiffs' counsel undertook the risk of not being compensated, a factor that cuts significantly in favor of awarding them a significant fee recovery here.")

The undersigned next considers whether the fourth factor, society's stake in rewarding attorneys who produce such benefits, militates in favor of an award of the requested attorney's fees. Class actions such as this "have a value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation—and as private law enforcement regimes that free public sector resources." *Gascho*, 822 F.3d at 287; *see also Kritzer*, 2012 WL 1945144, at \*9 ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own."). Without a class action, the individual plaintiffs would not have had a

---

[1] After reviewing counsel's detailed billing records, the undersigned has reservations regarding certain entries such as time spent on media relations, attendance at mediation by above-market rate attorneys who otherwise had little to do with the case, and clerical work that could have been performed by administrative assistants. However, even after removing these entries, the multiplier works out to approximately 2.73, which is still within the reasonable range.

strong incentive to pursue recovery because any monetary award would have been substantially outweighed by the costs to litigate their cases.

The remaining two factors, the complexity of the litigation and the professional skill and standing of the attorneys involved, also militate in favor of granting the requested award. "Generally speaking, '[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.'" *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (quoting *In re Austrian and German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 174 (S.D.N.Y. 2000)). Further, as explained supra, Class Counsel have extensive experience in class action and employment discrimination litigation. (*See* Romer-Friedman Dec. ¶¶ 4–25, ECF No. 24-2; Sherwin Dec. ¶ 10, ECF No. 24-6; Levenson Dec. ¶ 10, ECF No. 24-7.)

For all of these reasons, the undersigned concludes that these factors favor approval of the fee award of $1,666,666.67 to Class Counsel.

**B.      Settlement Administration and Other Costs**

Class Counsel avers that out-of-pocket expenses currently amount to $29,726.43. (Romer-Friedman Decl. ¶ 57, ECF No. 24-2.) RG/2 has also incurred settlement administration costs in the amount of $55,698.00. (Baldwin Dec. ¶ 19, ECF No. 24-9.) The undersigned finds that all of these costs are reasonable and necessary to litigate and settle this case and therefore approves the request of $29,726.43 for out-of-pocket expenses and $55,698.00 for settlement administration costs. *Cf. Feiertag v. OOP Holdings, LLC*, No. 14-cv-2643, 2016 WL 4721208, at *8 (S.D. Ohio Sept. 9, 2016). As to the settlement administration costs, per the Settlement, $50,000 shall be paid by Chase and the excess shall be paid out of the Gross Settlement Amount.

## C.      Service Award for Class Representative

Service "awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (reviewing such awards under an abuse of discretion standard). Notably, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (internal quotation marks and citations omitted).

Here, the Settlement Agreement proposes to award $20,000 to Mr. Rotondo for his efforts in bringing and pursuing this action, and in consideration of his general release. As Class Counsel explain, this award is warranted because he assisted Class Counsel with investigating the facts of the case, speaking with other Chase employees who experienced similar injuries, speaking with and e-mailing Class Counsel about the case and the settlement negotiations, and reviewing and approving the EEOC charge, the Complaint, and the Settlement and other pleadings, all of which was instrumental in achieving the Settlement. *(Rotondo Dec. ¶ 23*, ECF No. 24-8.) Considering this service, the undersigned recommends that the Court approve the service award in the amount of $20,000 to Mr. Rotondo. *See Owner-Operator Indep. Drivers Ass'n, Inc. v. Arctic Express, Inc.*, No. 2:97-cv-750, 2016 WL 5122565, at *7 (S.D. Ohio Sept. 21, 2016) (approving two service awards of $25,000 each from a $3 million settlement); *Davidson v. Henkel Corp.*, No. 12 Civ. 14103, 2015 WL 13034891, at *3 (E.D. Mich. Dec. 8, 2015) (approving $15,000 service award for the named plaintiff from a $3,350,000 settlement fund); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving six service awards of $50,000 each); *see also Dillow*, 2018 WL 4776977, at *8 (granting $8,500 service award from a $113,224 settlement, because named plaintiff

17

"contributed her efforts to the lawsuit by providing information and documents to her counsel, remaining informed and involved throughout the litigation, contacting and consulting her counsel concerning the litigation, reviewing documents and settlement proposals, and was willing to testify at a trial").

## IV.    CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** the Motion for Final Settlement Approval and Motion for Award of Attorneys' Fees (ECF Nos. 22 and 24) be **GRANTED**, and further **RECOMMENDS** the following be ordered:

1.        Based upon the Court's review of Plaintiff's Memorandum of Law in Support of Final Approval of the Class Action Settlement and all other papers submitted in connection with Plaintiff's Final Approval Motions, the Court grants final approval of the $5,000,000.00 settlement memorialized in the Settlement Agreement and Release ("Settlement Agreement"), and "so orders" all of its terms which are incorporated herein.  Capitalized terms used in this Order shall have the same meanings as set forth in the Settlement Agreement, unless otherwise defined herein.

2.        For settlement purposes only, the Court certifies the Settlement Class defined in the Settlement Agreement pursuant to Federal Rule of Civil Procedure 23(e) ("Settlement Class").

3.        The Settlement Class meets all of the requirements for class certification under Federal Rules of Civil Procedure 23(a) and (b)(3) for purposes of settlement only.

4.        The Settlement Class Period for Settlement Class Members who worked in any state outside of those included in separately-defined State Settlement Class Periods is from August 19, 2016 (300 days before the charge was filed) through December 4, 2017 (when Chase revised the 2016 policy).  The Settlement Class Member's non-primary caregiver leave or

request for non-primary or primary caregiver leave must have occurred during the Settlement Class Period or within sixteen (16) weeks before the Settlement Class Period (as the person still would have been eligible for paid parental leave benefits during the Settlement Class Period).

5.      If a Settlement Class Member worked in a state included in the State Settlement Class Periods, the Settlement Class Member's non-primary caregiver leave or request for non-primary or primary caregiver leave must have occurred during the applicable State Settlement Class Period or within twelve (12) weeks before the State Settlement Class Period (as the person still would have been eligible for paid parental leave benefits during the State Settlement Class Period), except that for Arkansas, Louisiana, Minnesota, North Carolina, Oregon, South Dakota, Tennessee and District of Columbia the Settlement Class Member's non-primary caregiver leave or request for non-primary or primary caregiver leave must have occurred during the applicable State Settlement Class Period or within sixteen (16) weeks before the State Settlement Class Period.  The following State Settlement Class Periods apply for the following states:

      a.    <u>Alaska, Maine, New Jersey, and West Virginia</u>: June 15, 2015 through December 4, 2017

      b.    <u>Michigan, New York, Washington, and Vermont</u>: June 15, 2014 through December 4, 2017

      c.    <u>California</u>: June 15, 2013 through December 4, 2017

      d.    <u>Kentucky</u>: June 15, 2012 through December 4, 2017

      e.    <u>Ohio</u>: June 15, 2011 through December 4, 2017

      f.    <u>Arkansas, Louisiana, Minnesota, North Carolina, Oregon, South Dakota, Tennessee, and District of Columbia</u>: June 15, 2016 through December 4, 2017

6.      Outten & Golden LLP and the American Civil Liberties Union Women's Rights Project ("ACLU"), which the Court previously appointed as Class Counsel in its Preliminary Approval Order, satisfy the adequacy requirements of Rule 23(g).

7. The Court finds that there were no objections to the Settlement.

8. The Court approves the settlement and all terms set forth in the Settlement Agreement, and finds that the settlement is, in all respects, fair, adequate, reasonable for the reasons set forth in the Court's June 21, 2019 Preliminary Approval Order, ECF No. 16, and is binding on all members of the Settlement Class who have not timely and properly opted out pursuant to Section 2.7 of the Settlement Agreement.

9. The attorneys at Outten & Golden LLP and the ACLU who prosecuted this case are experienced civil rights and employment lawyers with good reputations among the employment law bar. The Court grants Plaintiff's Motion for Attorneys' Fees and awards Class Counsel $1,666,666.67 in attorneys' fees, which is thirty-three and one third percent (33 1/3%) of the Gross Settlement Amount, plus $29,726.43 in costs and expenses reasonably expended litigating and resolving the lawsuit. The fee award is justified by the work that Class Counsel did negotiating the settlement and conducting the litigation, the ultimate recovery, and the risk that Class Counsel undertook in bringing the claims. These amounts shall be paid from the Gross Settlement Amount.

10. The Court finds reasonable the service payment for Plaintiff Derek Rotondo in the amount of $20,000 in recognition of the services he rendered on behalf of the Settlement Class Members. This amount shall be paid from the Gross Settlement Amount.

11. The Court approves the Settlement Administrator's fees and costs of no more than $55,698.00. Of this this amount, $50,000 shall be paid by Defendant and the excess shall be paid out of the Gross Settlement Amount.

12. Any amount remaining twenty (20) days after the expiration of the Acceptance Period for Settlement Checks will be redistributed among Settlement Class Members who have

timely cashed their checks or, if the amount remaining is small enough that a redistribution is not sensible in the discretion of the Class Counsel, the unclaimed will be donated under the *cy pres* doctrine. The Parties shall identify an organization or organizations to serve as the *cy pres* recipient if there are unclaimed settlement funds, which shall be subject to this Court's approval.

13.     If no individual or party appeals this Order, the Settlement Effective Date will be thirty-one (31) days after the Order is entered.

14.     If an individual or party appeals this Order, the Settlement Effective Date shall be the date after the day upon which the Settlement has been finally approved by the Court and any appeals of the Final Approval Order have been resolved with no further rights to appeal.

15.     The Settlement Administrator will disburse Settlement Checks to Settlement Class Members, the Named Plaintiff's Service Award, and Class Counsel's attorneys' fees, costs, and expenses within 30 days of the Effective Date.

16.     The Litigation is hereby dismissed with prejudice, with each side to assume their respective costs and attorneys' fees (other than such costs and attorneys' fees approved by the Court as set forth herein), subject to the Court's ongoing jurisdiction over the settlement process and any disputes that may arise over the administration of the settlement as set forth in Paragraph 17 below.

17.     The Court shall exercise continuing jurisdiction over the administration of the settlement and any disputes that may arise regarding the implementation or interpretation of the settlement, but such continuing jurisdiction shall end one month after all payments are made from the settlement fund.

18.      Upon the Effective Date, the doctrines of res judicata and collateral estoppel will bind all Settlement Class Members who do not timely and properly opt out, as determined by the Court, with respect to all claims identified in the Complaint.

19.      The Parties shall abide by all terms of the Settlement Agreement.

## V.      PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).   A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE